(70 Misc. Rep. 122.)

### ELLIS v. HURST et al.

(Supreme Court, Special Term, New York County. December, 1910.)

LITERARY PROPERTY (§ 5*)—UNCOPYRIGHTED WORKS—NAME OF AUTHOR—RIGHT TO USE.

> The right to publish uncopyrighted books with the nom de plume of the author carries with it the right to state the true name of the author, either upon the title page or otherwise; such use not falling within Civil Rights Law (Consol. Laws, c. 6) § 50, prohibiting the unauthorized use for advertising purposes or for the purposes of trade of the name of a living person.

> [Ed. Note.—For other cases, see Literary Property, Cent. Dig. § 4; Dec. Dig. § 5.*]

Action by Edward S. Ellis against Thomas D. Hurst and others. Judgment for defendants.

See, also, 66 Misc. Rep. 235, 121 N. Y. Supp. 438.

N. Burkan, for plaintiff.

A. Gilhooly, for defendants.

GREENBAUM, J. The action is brought under sections 50 and 51 of the civil rights law (Consol. Laws, c. 6) to enjoin the publication and sale by defendants of certain books with the imprint of

---

plaintiff's name on the covers in which they are bound and the wrappers in which they are inclosed. The plaintiff is an author of standing and reputation, who has written juvenile and historical works during the past 40 years. Among his earlier juvenile works are two, entitled "In the Apache Country," and "The White Mustang," which he published in 1888 and 1889, respectively, under the assumed name of "Lieutenant R. H. Jayne," and which have never been published by plaintiff or his authority in connection with his own proper name. It appears that neither of these publications was ever copyrighted, and no claim in respect of said stories is made under the copyright laws of the United States. Defendants, book publishers, have published and offered for sale printed copies of each of said literary productions of plaintiff, under his nom de plume of "Lieutenant R. H. Jayne," with the name of "Edward S. Ellis" and "Ellis" printed on the covers and wrappers of the books.

Plaintiff concedes that by reason of their dedication to the public the defendants had the right to reprint, publish, and sell these books. It is contended, however, that the dedication is limited to the books as published under the nom de plume; that, in the absence of any permission or consent on the part of plaintiff to use or print his real name in connection with the publications in question, defendants had no right to publish them with the imprint of his true name on the covers and wrappers; and that this use of his name is in violation of the statute to which reference has been made. The statute reads as follows:

"Sec. 50. Right of Privacy.—A person, firm or corporation that uses for advertising purposes or for the purposes of trade the name, portrait or picture of any living person, without having obtained the written consent of such a person, or if a minor, of his or her parent or guardian, is guilty of a misdemeanor."

Section 51 confers a right of action for injunction and for damages in favor of the person aggrieved under the provisions of section 50.

Where a statute is doubtful or ambiguous, resort may be had to the title of the act. Matter of Village of Middletown, 82 N. Y. 196, 199. In construing the broad language of the statute declaring the use of "the name, portrait or picture of any living person" without his written consent, "for advertising purposes or for the purposes of trade," to be a misdemeanor, the court will consider "the mischief which the statute was aimed at, and in order to give it effect words absolute in themselves and language the most broad and comprehensive may be qualified and restricted by other parts of the same statute, or by the facts and circumstances to which they relate." Blaschko v. Wurster, 156 N. Y. 437, 443, 51 N. E. 303, 305. In the light of this rule of construction, it may be seriously doubted whether the statute was intended to cover every case of the unauthorized use of another's name, picture, or portrait in connection with trade purposes, or whether it was intended to be limited to a class of cases where, before the enactment of the statute, no provision of law existed for redressing certain wrongs. The title of the act is "Right of Privacy," and it is now a matter of general knowledge that the act was passed in consequence of the suggestions contained in the opin-

ion in the case of Roberson v. Rochester Folding Box Co., 171 N. Y. 538, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 828, a view expressly recognized in the opinion of Rhodes v. Sperry & Hutchinson Co., 193 N. Y. 223, 227, 85 N. E. 1097, 1098 (127 Am. St. Rep. 945) the opening paragraph of which reads:

"In the case of Roberson v. Rochester Folding Box Co., 171 N. Y. 538, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 828, this court determined that in the absence of any statute on the subject, the right of privacy as a legal doctrine enforceable in equity did not exist in this state, so as to enable a woman to prevent the use of her portrait by others for advertising purposes without her consent."

If we turn to the opinion in the Roberson Case, supra, we find that it discusses learnedly and at length the doctrine of the "Right of Privacy," and the incorporation of the phrase in the title of the act under review should therefore be given due significance. The act was evidently designed to forbid the unauthorized and wanton appropriation or use of a person's name, picture, or portrait for trade or advertising purposes, where such use is wholly unrelated to the matters or things with which said name, picture, or portrait is associated, and it may perhaps also have been intended to forbid the unauthorized use of one's name, portrait, or picture when such use is asserted to be related to or connected with the things advertised or sold, but where such a relationship or connection is, in fact, unreal, unsubstantial, pretended, or false. If the act were to be construed as broadly as here claimed, then one who advertises the sale of a well-known brand of flour, by using without his written consent the name of the manufacturer of the flour, would be guilty of a misdemeanor. Or if a clothier advertises the sale of certain garments, and uses in the advertisements the name of the person who manufactured the cloth from which the garments were made without the latter's consent, then would he be guilty of a misdemeanor? Instances might be multiplied showing the absurdity of construing the act in its broadest terms.

In the case at bar the defendants concededly had the right to publish the books in suit with the nom de plume of plaintiff, and this right carried with it the right to state the true "name of the author in such form in the book, either upon the title page or otherwise, as to show who was the writer or author thereof." The "Mark Twain" Case (C. C.) 14 Fed. 728, 730. The nom de plume of an author is but the synonym of his true name, and, as was said in the "Mark Twain" Case, supra, 14 Fed. at page 731, "the invention of a nom de plume gives the writer no increase of right over another who uses his own name," in the absence of a copyright.

In publishing plaintiff's name on the volumes under consideration, the defendants published a truthful statement, directly connected with the authorship of the books, which they had a right to print. This is, therefore, unlike the case of Eliot v. Jones, 66 Misc. Rep. 95, 120 N. Y. Supp. 989, affirmed without opinion by the Appellate Division, 140 App. Div. 911, 125 N. Y. Supp. 1119, where President Eliot's name was used with respect to a publication not made by him or with his authority, and which was, therefore, a use based upon a false statement of fact.

The case of Collier v. Jones, 66 Misc. Rep. 97, 120 N. Y. Supp. 991, relied upon by the plaintiff, was not brought under the statute. here invoked, but under the doctrine of unfair competition, and in the case of Victor Herbert v. Universal Talking Machine Co., N. Y. L. J., March 9, 1904, it appears from an examination of the record that the defendant sold graphophone records, using in connection therewith the name of the plaintiff, who had nothing whatever to do with them.

I am of opinion that the defendants' acts here complained of do not come within the prohibition of the statute here invoked, and that the judgment should go for the defendants.

Judgment for defendants.