### HOLTZMAN v DARBY et

Ohio Appeals, 2nd Dist, Franklin Co

No 2918. Decided Oct 25, 1938

Harry L. Hopwood, Columbus, Williams, Williams, Klapp & Reynolds, Columbus, for plaintiff-appellant.

Horace S. Kerr, Columbus, for defendant-appellee.

## OPINION

By THE COURT

Defendants demurred generally to the second amended petition of the plaintiff, which demurrer was sustained. Plaintiff electing to plead no further, the petition was dismissed and judgment entered for costs. To this judgment an appeal on questions of law is prosecuted.

We set out only so much of the second amended petition as is necessary to an appreciation of the question raised by the demurrer.

It is averred that on and prior to April, 1933, the plaintiff was the owner, holder and possessor of a certain map and survey and of the detailed designs and information set forth thereon, which survey the plaintiff had theretofore caused to be made of a certain tract of 17.99 acres of land, then located in Truro Township, Franklin County, but at the time of the filing of the petition located in the City of Columbus, Ohio, which tract is described in the petition and is a part of a subdivision made by the defendants, being known as lots Nos. 1 to 84 of Darfield, duly recorded in the recorded plat in the recorder's office of Franklin County, Ohio; that plaintiff has had experience as a subdivider of real estate and had given personal time and attention and personal knowledge and skill in the preparation and details of such plat and survey of such Darfield subdivision and that said plat and survey and the information set forth was of a certain special value in connection with such tract of land above described; that in 1933 the plaintiff was the owner of said tract of land, which was encumbered by a mortgage held by defendants, which they were pressing the plaintiff to pay; that plaintiff had made the aforesaid plat and survey but had not used it and had not dedicated the subdivision according to law but retained the same as his own work and property; that plaintiff sold certain portions of said tract and conveyed them by metes and bounds but so as to conform to certain lots as shown upon the plat and survey; that upon the sale of such parcels of land it was necessary that the defendants release them from the lien of the mortgage which was done upon certain payments to the defendant; that at the time when the aforesaid sales were being negotiated defendants requested plaintiff to loan a copy of said plat and survey to them for examination only "so that it would be more convenient for the said defendants to consider and determine the action of the defendants in the matter of their releasing such small portions", and other proposed sales of small portions, of said 17.99 acre tract aforementioned, from the lien of such mortgage, and for no other purpose whatsoever; that the plaintiff thereupon, in response to such request for such purpose and for such purpose only, delivered a copy of said plat and survey to the defendants for such examination for such purpose and for such purpose only, and for no other use or purpose whatsoever; that at or about the said time aforesaid the plaintiff had placed another copy of said plat and survey in the possession of an agent of the plaintiff, who was at said times engaged in seeking purchasers for such small portions of said original tract of 17.99 acres as aforesaid, but not otherwise authorized as was well known to the defendants, for the like convenience of said agent in negotiating such sales of such small portions of said original tract of 17.99 acres of land and for no other purpose or use whatsoever, and that without the plaintiff's authority, knowledge or consent, the defendants by some representations, the nature of which are unknown to this plaintiff, also secured possession of such further copy of such plat and survey from such agent of the plaintiff.

It is further averred that thereafter defendants instituted a foreclosure action against the plaintiff on the tract of 17.99 acres of land above described, to which answer was made by the plaintiff and that thereafter on September 26, 1935, the parties entered into an agreement in writing of compromise and settlement of said foreclosure action by the terms of which plaintiff agreed to and did convey to the defendants the tract of land aforesaid, less certain small parts thereof which had theretofore been sold by plaintiff and the defendant agreed to and did cancel and release the mortgage and note secured thereby; that other details of the settlement were set forth in the written agreement but that it contained no provision or stipulation of any kind concerning said plat and survey; that when said settlement agreement was consummated at the time of execution and delivery of the deed to aforesaid premises and as a condition thereof, plaintiff demanded from the defendants the return of said plat and survey; that in response to such demand one copy only was returned,

the identity of which is not known by plaintiff but that defendants failed and neglected, without the knowledge or consent of plaintiff. to return the other copy of said plat and survey and retained it.

It is further averred that defendants thereafter, in violation of and contrary to the agreement and purpose for which the plat and survey was delivered, made use thereof and of the detailed information and data set forth therein and of the special details and designs of subdivision which the plaintiff by reason of his skill and experience had placed in the said details and form of such subdivision and by use of such plat and survey caused a certain plat of a certain subdivision of the said tract of land to be made by themselves and certain other parties and that such subdivision was and is known as Darfield and that the defendants executed such plat and survey of said Darfield Subdivision in January, 1936, and took all necessary steps to dedicate such subdivision to the City of Columbus and file same for public record in the office of the recorder of Franklin County.

It is further averred that by reason of the use of the information and designs of the subdivision and the making and recording in public record thereof, defendants have, by use of the property, rights and titles of the plaintiff unjustly gained a profit and increase in the value of the land so subdivided and have received and secured such increase in value by means of the sale of numerous of said lots and have gained profits in the amount of $20,000.00.

The prayer is for judgment from the defendants in the sum of $20,000.00, with interest, and that the court find and decree such amount owing from defendants to the plaintiff to be a charge and lien upon the lands and lots described and that upon a determination of the amount found to be due the plaintiffs and decree therefor, upon default in the payment thereof the lots above described be sold as upon execution and for further relief in equity and good conscience.

The original petition and first amended petition have been challenged by demurrers, both of which were sustained. We are not concerned with the action as to the first two petitions but direct our consideration solely to the ruling upon the second amended petition.

We have been favored with the opinion of the judge who sustained the demurrer to the second amended petition and learn that it is based upon the theory that the plaintiff, by his delivery of the plat and survey to the defendants and possibly by the use thereof by the agent of the plaintiff, had given publication thereto and that any originality in the plat or survey, the result of skill or experience and exclusive right to its use had by such publication been surrendered.

The briefs are extensive. We are of opinion that there are but two questions presented by the demurrer:

(1) Does the petition set forth by sufficient averment that the plat and survey was a product of such artistic or literary merit as would support the claim to protection in the intangible ownership thereof?

(2) And if No. 1 is answered in the affirmative, did the plaintiff by conduct surrender all his rights to the use and benefit of said survey and plat?

The trial judge did not give any special consideration to the first question. We believe that tested upon demurrer the petition meets the requisites of the first test. Without repeating from the petition at length, suffice to say that it is averred that the plaintiff had such knowledge and skill incident to the preparing of the plat and survey and that it had certain special value in connection with the tract of land. Of course, this averment alone as to its special value would be but a conclusion of law but it is followed by the further averment that said survey and plat was made up of detailed information and data therein set forth, of special details and designs which have been placed therein by reason of the skill and experience of the plaintiff. Value may have been added to this land by the artistic manner and method of laying it out into lots. It is common knowledge that subdivisions have been platted upon unusual and artistic arrangement of lots and streets and that the sale of such subdivisions has thereby been accelerated and values increased.

In 13 C. J. page 947. the property rights of an author are discussed generally, which by analogy is helpful in the instant case:

"An author has, at common law, a property in his intellectual production before it has been published, and may obtain redress against any one who deprives him of it, or, by improperly obtaining a copy, endeavors to publish or to use it without his consent."

At page 946:

"The common law prohibits any kind of unauthorized interference with, or use of, an unpublished work on the ground of

an exclusive property right, and the common law right is perpetual, existing until lost or terminated by the voluntary act of the owner."

Upon the averments of the second amended petition we are satisfied that the plat and survey, the subject matter of the action, can be said to be an original production of artistic and literary merit.

The next, and possibly more difficult question, is whether or not the plaintiff has, by his actions, given general publication to the contents of the plat and survey. There are but two ways under the facts in which this could have been done:

(1) By the use of the plat and survey by plaintiff's agent;

(2) By loan thereof to defendants.

The first was but a restricted use and was no greater than the use of the plat by the plaintiff himself. Nor does the use for which the plat was employed by plaintiff's agent, namely to identify certain parcels of land described by metes and bounds with respect to lot numbers, evince a purpose to make the information in the plat and survey available to the public.

(2) The petition avers and reiterates that the sole and only purpose for which any plat was permitted to get into the possession of the defendants was for use in determining the identity of property sold, so that proper release might be made thereof from the mortgage held by the defendants. This restricted use, in our judgment, is not in any sense broad enough to require the conclusion that it contemplated a publication of the information in the plat and survey. It was, upon the averments of the petition, a very restricted use. The use to which the defendants thereafter put the survey and plat clearly exemplifies that which constitutes a publication.

"Such restricted use of his work as does not amount to a dedication thereof to the public will not curtail the right to prevent the unauthorized use by another. A general publication consists of such a disclosure, communication, circulation, exhibition or distribution of the subject matter tendered or given to one or more members of the general public as implies an abandonment of the right of copyright or its dedication to the public."

American Tobacco Co. v Werckmeister, 207 U. S. 284.

"While an unqualified, unauthorized publication of an intellectual production * * * dedicated the work to the public, a limited or qualified publication will not abridge the rights of the owner any further than necessarily results from the nature and extent of such limited use as he has made or allowed others to make of his work."

Bobbs-Merrill Co. v Strauss, 147 Fed. 15.

"In cases of literary, scientific and professional treatises in manuscript, it is obvious that the author must be deemed to possess the original ownership and be entitled to appropriate them to such uses as he shall please. Nor can he be justly deemed to intend to part with that ownership by depositing them in the possession of a third person, or by allowing a third person to take and hold a copy of them. Such acts must be deemed strictly limited, in point of right, use, and effect, to the very occasions expressed or implied, and ought not to be construed as a general gift or authority for any purposes of profit or publication to which the receiver may choose to devote them."

Story on Equity, paragraph 943.

"To permit a copy of manuscript to be made or to make a gift of a copy thereof is not such publication as will amount to an abandonment and the person receiving the copy can not make any other use of the work except with the consent of the owner."

13 C. J. 981. Citing Werkmeister v American Lithographic Co., 134 Fed. 321.

It has been held that the writer of a letter has a right of property therein superior to that of the person to whom the letter is sent, which entitles the writer to a remedy against any unauthorized publication, either by the person to whom the letter is sent or by a stranger. The principle is that recognition of property is in the writer, although he has parted with the manuscript, since he wrote to enable his correspondent to know his sentiments, not to give them to the world. Baker v Libbie, (Mass.) 37 L.R.A. (N.S.) 944.

It has been determined that an architect has a common law right of property in the design of a novel and artistic porch before its publication by application to a building which he has erected. Gendel v Orr, 13 Phila. (Pa.), 191. The property right of an architect in plans and architectural drawings and specifications is recognized until he has relinquished them by publication. Wright v Eisle, 83 N. Y. Supp., 887.

It has even been held that one may be protected for the result of his mental labors in his literary production even though it has no distinct literary or artistic merit. 13 C. J. 953, citing Baker v Libbie, supra.

Counsel for plaintiff have presented numerous citations supporting his claim that he may assert an intangible property right in the survey and plat described in the petition and also upon the further claim that he has not surrendered this property right by any action set forth in the petition. We do not consider it necessary to set out these authorities at length in this written opinion We have examined them and they support the contention of the plaintiff in both respects.

We are satisfied that the facts in this case as plead must be resolved in favor of plaintiff upon both questions, which we have considered.

We call attention to the elementary proposition that we pass upon the question here presented upon the undenied averments of the second amended petition and with the realization that if upon all facts well plead a cause of action is stated it is good as against general demurrer.

Much has been said in this case to effect that this action is frivolous. This may be so but it does not appear upon the petition. It is asserted that the survey and plat which plaintiff claims to be the product of his literary effort, was not converted and used by the defendants; that the plat and survey was of no considerable value and that the plaintiff suffered no loss whatever by the use which was made thereof. These contentions may be well made and may clearly appear if set up in an answer and met by the proof, so that eventually the plaintiff may fail entirely upon his own averments or it may be established that his action is frivolous or that he has suffered no loss whatever and is entitled to no damage. This conclusion, however, we can not draw at this stage of the proceedings upon the undenied averments of the second amended petition, which we must accept as true.

It is our judgment that the general demurrer to the second amended petition should have been overruled and the defendants required to answer. It will be so ordered.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.