**Donald SEAY and Ingrid Seay,
Appellants (Plaintiffs below),**

v.

**Augustin VIALPANDO and Ralph Anderson, Appellees (Defendants below).**

No. 4738.

Supreme Court of Wyoming.

Aug. 3, 1977.

Stuart S. Healy, of Kennedy, Connor & Healy, Sheridan, for appellants.

John E. Stanfield, of Smith, Stanfield & Scott, Laramie, for appellee-Augustin Vialpando.

George J. Millett, of Pence, Millett & MacMillan, Laramie, appeared for oral argument; and Horace M. MacMillan, II, Laramie, signed the brief, for appellee-Ralph Anderson.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

Donald and Ingrid Seay brought suit against Augustin Vialpando and Ralph Anderson in connection with the design of a home, which Anderson had built for appellants. Appellants sought actual and punitive damages for a violation of their common-law copyright in certain architectural blueprints. In the alternative, appellants sought damages for conversion of the blueprints, and stated a further cause of action seeking quantum meruit recovery. Appellees filed separate motions for summary judgment, and appellants filed a cross-motion for summary judgment. Appellees' motions were granted. We will reverse the summary judgments since we find that there is a genuine issue as to the material fact concerning the publication of the blueprints.

In 1973, Donald Seay, according to his own talents and initiative, drew the plans and blueprints for the home he intended to build for himself in Laramie, Wyoming; and he hired Mr. Ralph Anderson to con-

struct the exterior of the house. Vialpando was hired to paint the exterior. During the course of construction, copies of the blueprints were supplied to Messrs. Vialpando and Anderson, as well as to a bank loan officer and to other contractors constructing various parts of the home. Some minor changes were made in the original plans after consultation with Anderson and his wife, but the appellants' basic, original, Spanish-motif exterior design was retained. The record discloses that the plan copies bore only Seay's name and a date, and that when such copies were distributed the Seays neither granted nor denied appellees the right to copy the ideas expressed in them. Sometime after the Seay home was completed, Anderson used the appellants' plans to construct the exterior of a home for Vialpando. In their depositions, both appellees represented that they did not think they were doing anything wrong by incorporating exterior features of the Seay home into the Vialpando house, and they admitted using the plans for this purpose.

█ In reviewing the record on appeal from the granting or denial of a summary judgment, we must look at the record from a viewpoint most favorable to the party opposing the motion. *Tri-State Oil Tool Industries, Inc. v. EMC Energies,* Wyo., 561 P.2d 714; *Shrum v. Zeltwanger,* Wyo., 559 P.2d 1384; and *Bluejacket v. Carney,* Wyo., 550 P.2d 494. When a motion for summary judgment is before us, we have exactly the same duty as the trial judge and, assuming the record is complete, we have exactly the same material and information in front of us as he did. *Hunter v. Farmers Insurance Group,* Wyo., 554 P.2d 1239, 1244. The moving party has the burden of showing the absence of a genuine issue of material fact. *Hunter v. Farmers Insurance Group,* supra, at 1243; and *Knudson v. Hilzer,* Wyo., 551 P.2d 680, 685. The fact that both parties have moved for summary judgment does not mean that there is no genuine issue of fact. This determination is a question of law that must be decided by the court, irrespective of what either of the parties may have thought about the matter. 10 Wright and Miller, Federal Practice and Procedure: Civil § 2720, at 459–461 (1973). Our task, then, is to first determine whether appellees sustained their burden of showing that there was no genuine issue of fact. If not, and there is a genuine issue of fact, then neither party was entitled to summary judgment. In pursuing this inquiry, we are guided by certain principles which we established in *Johnson v. Soulis,* Wyo., 542 P.2d 867, 872:

". . . [F]or purposes of ruling upon a motion for summary judgment a fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. Such a fact would necessarily affect the application of the appropriate principle of law to the rights and obligations of the parties. In considering a motion for summary judgment it is appropriate for a court to identify the essential elements of the plaintiff's cause or of the defense asserted, and to then determine the materiality of any fact in the light of whether it will establish or refute one of those essential elements. If it does not have that effect, it would not be a material fact in the controversy, and a genuine issue with respect to that fact, no matter how sharp, would not foreclose the granting of a motion for summary judgment."

█ We have previously recognized the property right commonly referred to as a common-law copyright, and have applied it to blueprints and drawings. *Vic Alexander & Associates v. Cheyenne Neon Sign Co.,* Wyo., 417 P.2d 921. The appellees do not challenge this principle of law. Rather, they contend that Seay's failure to advise them of his property interest in the blueprints and construction of the Seay home constituted a publication of his work, barring his right to recover. When faced with a similar contention in *Vic Alexander,* supra, we stated:

"The term 'publication,' as used in connection with common-law copyrights, is employed to denote those acts of an author or creator which evidence a dedica-

tion of his work to the public and on which depends the loss of his common-law copyright. See 18 Am.Jur.2d, Copyright and Literary Property, § 76, p. 366.

"In this case we cannot say the mere leaving of drawings in defendant's store and the construction of its Cheyenne sign would, as a matter of law, evidence an intention on the part of plaintiff to dedicate its work to the public generally. This determination is necessarily for the trier, and in this instance there is an absence of a finding that publication took place. Thus, it is unnecessary for us to decide whether publication can be urged as a defense without being pleaded as an affirmative defense." 417 P.2d at 923.

Similarly, in the instant case we are unable, as a matter of law, to say that the mere leaving of blueprints with a contractor for the construction of a house constitutes a publication which is destructive of the common-law copyright. Rather, there is a genuine question as to whether appellants' acts with respect to the blueprints constituted a general publication of the plans.

■ In copyright law, there are two forms of publication: one, general publication; the other, limited publication. Only the former type of communication divests one of his common-law rights to his work. Katz, "Copyright Protection of Architectural Plans, Drawings, and Designs," 19 Law and Contemporary Problems 225, 233 (1954); Nimmer on Copyright, § 58, at 224 (1976); *Smith v. Paul,* 174 Cal.App.2d 744, 345 P.2d 546, 549, 77 A.L.R.2d 1036 (1959). A general publication is

". . . such a disclosure, communication, circulation, exhibition, or distribution of the subject of copyright, tendered or given to one or more members of the general public, as implies an abandonment of the right of copyright or its dedication to the public. . . ." *Werckmeister v. American Lithographic Co.,* 2 Cir., 134 F. 321, 326.

As stated in *Edgar H. Wood Associates, Inc. v. Skene,* 347 Mass. 351, 197 N.E.2d 886, 892:

". . . A limited publication is 'one which communicates a knowledge of its contents under conditions expressly or impliedly precluding its dedication to the public' (134 F. p. 324). Further, to be general a publication must be such ' "* * as to justify the belief that it took place with the intention of rendering * * * [the] work common property." ' *American Tobacco Co. v. Werckmeister,* 207 U.S. 284, 299–300, 28 S.Ct. 72, 77, 52 L.Ed. 208. *Continental Cas. Co. v. Beardsley,* 253 F.2d 702, 707 (2d Cir.), cert. den., 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58. See *White v. Kimmell,* 193 F.2d 744, 747 (9th Cir.). As more recently stated, 'a * * * publication which communicates the contents of a manuscript to a definitely selected group and for a limited purpose, and without the right of diffusion, reproduction, distribution or sale, is considered a "limited publication," which does not result in loss of the author's common-law right to his manuscript; but * * * the circulation must be restricted both as to persons and purpose, or it cannot be called a private or limited publication.' *White v. Kimmell,* supra, 193 F.2d 746–747. *American Visuals Corp. v. Holland,* 239 F.2d 740, 744 (2d Cir.). *Continental Cas. Co. v. Beardsley,* supra, 253 F.2d 706–707. While the test is properly one of intention, it is clear that the unexpressed, subjective intention of the creator cannot be allowed to govern (see *National Comics Publications Inc. v. Fawcett Publications, Inc.,* 191 F.2d 594, 598 [2d Cir.]); rather the implications of his outward actions to the reasonable outsider are controlling." [Footnote omitted]

To ascertain the intention of the owner, an objective test is applied and emphasis is given to what the owner does rather than what he claims he intended. *Read v. Turner,* 239 Cal.App.2d 504, 48 Cal.Rptr. 919, 40 A.L.R.3d 237.

■ Generally, the fact that a building, after construction, is open to public view does not constitute a general publication of the *plans* for the building, even though the interior or exterior is copyable by anyone

with sufficient ability. *Krahmer v. Luing*, 127 N.J.Super. 270, 317 A.2d 96, 98–99; *Nucor Corporation v. Tennessee Forging Steel Service, Inc.*, 8 Cir., 476 F.2d 386, 390–391; *Edgar H. Wood Associates, Inc. v. Skene*, supra, at 895; and *Smith v. Paul*, supra, at 553–554. cf. *Masterson v. McCroskie*, Colo. App., 556 P.2d 1231, 1233–1234. We agree with this view and hold it to represent the better-reasoned conclusion. The fact that a building exterior can be copied by anyone, is not to say that such copying *with the assistance of another's plans* is permissible. Use of the plans is what brings on an infringement, no matter how slight the infringement.

Also, standing alone, the delivery of plans to contractors for building purposes, and to successful bidders to assist them in constructing the house, is generally a limited-purpose publication. *Masterson v. McCroskie,* supra, at 1233; *Nucor Corp. v. Tennessee Forging Steel Service, Inc.,* supra, at 390; and *Ashworth v. Glover*, 20 Utah 2d 85, 433 P.2d 315, 319. cf., *Ballard H. T. Kirk & Associates, Inc. v. Poston*, 33 Ohio App.2d 117, 293 N.E.2d 102, 104. See also *Data General Corporation v. Digital Computer Controls, Inc.*, Del.Ch., 357 A.2d 105, 113.

Clearly, a factual situation does not always neatly fit into one or the other types of publication. This is particularly true where, as in the present case, plans are delivered to various contractors and subcontractors for the implied purpose of merely using them in connection with the construction of a particular building. In the present case, the question of publication was a crucial issue of fact for the trier, and summary judgment was inappropriate. See *Vic Alexander & Associates v. Cheyenne Neon Sign Co.*, supra. While all parties agree as to the underlying facts, there is a dispute as to the material fact of publication. When the matter is tried, appellees will have the burden of proving that these underlying facts constituted a general publication. *Krahmer v. Luing*, supra, at 98; *Shaw v. Williamsville Manor, Inc.*, 38 A.D. 2d 442, 330 N.Y.S.2d 623, 624.

With respect to appellants' second cause of action, a similar question of material fact exists. Where a defendant comes rightfully into possession of another's property, he commits conversion when he deals with such property in a wrongful manner and the plaintiff has the right to immediate possession. *De Clark v. Bell*, 10 Wyo. 1, 65 P. 852, 853. A claim for conversion, however, is barred if the plaintiff expressly or implicitly assents to or ratifies the use of his property. 89 C.J.S. Trover and Conversion § 5. Although some notice of ownership may be necessary, good faith on the part of a defendant or ignorance of the owner's rights does not avoid the consequences of an unauthorized act constituting conversion. 89 C.J.S. Trover and Conversion §§ 8 and 83. While an intent to convert is necessary, that intent need not be wrongful. 89 C.J.S. Trover and Conversion § 7. These general principles indicate that a trier-of-fact's conclusion as to the publication issue presented herein may have a bearing on appellants' conversion claim. Summary judgment was, therefore, inappropriate as to the second cause of action.

Finally, appellants sought to recover in quantum meruit against Vialpando. We stated in *Vic Alexander & Associates v. Cheyenne Neon Sign Co.*, supra, at 924:

"There is ample precedent for holding that the originator of a novel idea reduced to concrete form and disclosed to a wrongful appropriator, *under circumstances indicating that compensation was expected if the idea should be used*, may recover from such appropriator in the event his idea is used—even though the idea had value only for the appropriator's purposes. *Stanley v. Columbia Broadcasting System, Inc.*, 35 Cal.2d 653, 221 P.2d 73, 75, 23 A.L.R.2d 216; *Liggett & Meyer Tobacco Co. v. Meyer*, 101 Ind. App. 420, 194 N.E. 206, 210; and *How J. Ryan & Associates, Inc. v. Century Brewing Ass'n*, 185 Wash. 600, 55 P.2d 1053, 104 A.L.R. 1353." [Emphasis supplied]

Whether the blueprints in this case were delivered under circumstances which would reasonably give rise to such a belief on the

part of the appellees relates somewhat to the factual question of publication, and again summary judgment was inappropriate.

We hold, therefore, that the district court erred in granting appellees' motions for summary judgment, and we remand the case for trial on all issues.

Reversed.